Mavis DAY, Plaintiff-Appellant,

v.

**SOUTH PARK INDEPENDENT SCHOOL DISTRICT, Defendant-Appellee.**

No. 84–2119.

United States Court of Appeals, Fifth Circuit.

Aug. 16, 1985.

Robert E. Hall, Houston, Tex., Robert H. Chanin and Gary L. Sasso, Washington, D.C., for plaintiff-appellant.

Wells, Peyton, Beard, Greenberg, Hunt & Crawford, Tanner T. Hunt, Jr., Beaumont, Tex., for defendant-appellee.

Before RUBIN, WILLIAMS, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The first amendment protects freedom of speech and the right to petition the Government for a redress of grievances. An untenured school teacher asserts that these rights were violated when her contract was not renewed because she protested her principal's unfavorable evaluation of her performance. The facts support the district court's conclusion that her actions, whether viewed as speech, petitioning, or both, related only to her superior's employment decisions that affected her in a purely personal manner not to matters of political, social, or community concern. We affirm his conclusion that the teacher was, therefore, not shielded by the first amendment from the school board's decision not to renew her contract. Constitutional rights deserve solicitous protection but the Constitution does not secure every governmental employee from adverse employment action, and it does not guarantee federal relief to every state employee who is injured, even improperly, by a decision made in the course of an employment relationship.

## I.

Mavis Day, an untenured English teacher at Hebert High School in the South Park Independent School District who had been employed for one and two-year periods, filed this suit under the Civil Rights Act, 42 U.S.C. § 1983, asserting that the School District violated her first and fourteenth amendment rights by refusing to renew her contract for the 1980–1981 school year after she complained about her performance evaluation and filed a grievance. Her evidence warrants these factual conclusions.

In March, 1980, the principal of Hebert High made an evaluation of Day's teaching performance for the 1979–1980 school year, as he was required to do for all teachers. In eighteen of the twenty-four skills and personality characteristics evaluated, Day received a satisfactory rating, with positive comments dispersed throughout the evaluation form. In the other six categories, which mainly concern attitude toward school policies and relations with colleagues, Day received an unsatisfactory rating. Some of the principal's comments were: a "[l]ack of control in working with peers is often evident," and "Ms. Day does not always recognize the value of group effort. Often this causes conflicts." He recommended that Day be transferred because "[t]his teacher may function better in a different environment."

Day and the principal met on March 13 for an evaluation conference, but the principal did not explain the negative aspects of Day's evaluation to her satisfaction. Four days later, Day wrote a letter to the principal detailing her dissatisfaction with the negative evaluation and asking for specific illustrations of how her attitude had been unsatisfactory, so that she might improve it. The principal did not respond to Day's request. Day then challenged the evaluation by invoking the School District's formal grievance procedure.

Statement of Policy 4020, which outlines the formal grievance procedure, defines a grievance in the following manner:

A "grievance" is a petition by a teacher or a group of teachers based upon an alleged violation, misinterpretation, or inequitable application of any existing policies, rules, or regulations of the school district, but shall not include a petition based upon disciplinary action not directly based on policies of the Board of the District.

Policy 4020 then states that an aggrieved teacher will first discuss a problem with the appropriate principal and that, if the matter is not resolved informally, "formal procedures may then be instituted." After outlining the levels of the grievance structure, Policy 4020 states: "No reprisals of any kind shall be taken by either party or by any member of the Administration against any party in interest, any school representative, or any other participant in the grievance procedure by reason of such participation."

Day invoked Level One of the grievance procedure on March 28, 1980, by submitting her grievance in writing to the principal, and, when the principal did not respond within the time limit dictated by Policy 4020, she submitted her grievance to the superintendent. Both grievances refer to "solving problems connected with my evaluation." The superintendent responded by letter, stating that Day's complaint was not "grievable."

At trial, the superintendent testified that the School District has a policy against entertaining grievances concerning teacher evaluations because it is the principal's responsibility to evaluate his teachers and officials higher in the administration cannot make a determination of the correctness of the teacher's point of view as opposed to the principal's. The formal grievance procedure might be invoked only if the principal violated Board policy in the process, for example, by refusing to evaluate a teacher or to sign the evaluation form. This was supported by other testimony at trial, although no School District policy statement explicitly makes this distinction.

After Day received the superintendent's response, she requested arbitration, as the procedural guidelines in Policy 4020 permit. Her request was denied by the board of trustees because "dissatisfaction ... with one's evaluation is not a grievable complaint under board policy # 4020, or under any other provision of district policy."

By letter, the assistant superintendent advised Day in May that the School District had decided not to renew her contract for the 1980–1981 school year. At trial, the School District produced testimony that this decision was based on declining enrollment, a decision to eliminate one teaching position in the English Department at He-

bert, and the fact that "Day was the least senior among English teachers whose contracts expired in 1980." Day adduced testimony that the contract of an English teacher who had taught at Hebert for only one year had been renewed for the school year and that the principal told this teacher not to "associate with controversial people" because "he was going to rid himself of these controversial people, and unless [she] wanted to be in the same predicament [she] should watch who [she] associated with." This English teacher testified that she understood that Day was one of these "controversial people."

Day appealed to the State Commissioner of Education challenging the School District's refusal to arbitrate her grievance, and she subsequently appealed the School District's nonrenewal decision. While the appeals were pending, the School District agreed to expunge the 1980 evaluation from its records, and, with Day's consent, the State Commissioner entered an order requiring this and dismissing the appeal concerning the evaluation. After a hearing, the Commissioner rejected Day's challenge to her nonrenewal. Day appealed this decision to the State Board of Education, which found: (1) the School District's policies prohibit retaliation for an employee's exercise of grievance rights; (2) the record contains some evidence supporting the allegation that the principal's recommendation for nonrenewal was given in retaliation for Day's exercise of her grievance rights; and (3) the School District has not conducted a hearing to determine whether Day's nonrenewal resulted from a violation of School District policy. The Board of Education ordered the School District to conduct a hearing on the matter and remanded for that purpose. On remand, the School District decided that Day's claim should be "deferred for arbitration" but that such arbitration should not take place until the case *sub judice* is finally adjudicated.

At trial, Day sought to prove that the School District decided not to renew her contract in order to retaliate against her for filing a grievance and that this violated her first amendment right to petition the government for redress of grievances. After Day rested, the district court granted the School District's motion for a directed verdict. The court concluded that under *Connick v. Meyers*[1] and *Pickering v. Board of Education*,[2] Day's speech activities did not warrant first amendment protection because they did not relate to a matter of public concern and because the "essence of the protest" did not involve the grievance procedure or School District policy. The court concluded that Day's complaint was purely a matter of a disagreement with the merits of the rating. It also found that a substantial reason for the nonrenewal of her contract was that she complained to the principal and filed a grievance and that her contract would have been renewed but for her complaint on "a purely private matter."

The trial court further concluded that the right to redress of grievances "is so dovetailed into" the question of whether the speech is protected that it could not distinguish between them. Although the court found that the right to redress of grievances "exists for protected speech," it concluded that it was obligated by law to rule for the School District in this case. The court also saw no violation of due process in the evidence presented to that point in the case.

█ Only the redress of grievances issue is raised on appeal: whether a public employee's complaint to her superior about her teaching evaluation is protected by the petition clause of the first amendment. Because the district court rendered a directed verdict, we view all of the evidence "in the light and with all reasonable infer-

1. 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

2. 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

ences most favorable to the party opposing the motion." [3]

## II.

■ In order to establish a prima facie case of a violation of the first amendment free speech clause, Day must show that her conduct is constitutionally protected and that it was a substantial or motivating factor in the School District's decision not to renew her contract.[4] When a public employee invokes the first amendment as a basis for reviewing an employment decision made by the governmental employer, however, the protection it accords must be balanced against the government's interest in, and need for, efficient public administration. Thus, in *Pickering v. Board of Education*,[5] the Supreme Court held that a public school teacher cannot be discharged for making statements on a matter of legitimate public concern unless the statements are shown to have interfered with the proper performance of the teacher's daily duties or with the regular operation of the schools, or to have been falsehoods recklessly and knowingly made.[6] In such circumstances, the state's legitimate interest in the efficient operation of its schools does not outweigh the teacher's right to freedom of speech. The predicate for protecting the teacher, however, was the teacher's right, as a citizen, to speak on a matter of public concern as well as the public interest in having free and unhindered debate on matters of public importance.

In *Connick v. Meyers*,[7] the Supreme Court further emphasized the importance of the requirement that the speech in question address a matter of legitimate public concern if it is to be protected by the first amendment freedom of speech clause:

> When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.... [W]hen a public employee speaks not as a citizen upon matters of public interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.[8]

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the record as a whole," [9] the Court said.

■ The district court correctly concluded that Day's complaint was "purely a private matter." She was primarily concerned about her principal's negative evaluation of her performance and his failure to explain her evaluation to her satisfaction. This is evident from her letter of complaint to the principal, her letters written to the principal and superintendent invoking the formal grievance procedure, and her testimony at trial. She did not speak "as a citizen upon matters of public concern," [10] but only as an individual "with individual personal disputes and grievances" concerning "information [that] would be of no relevance to the public's evaluation of the performance of governmental agencies." [11]

---

3. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969); *see also United States v. Vahlco Corp.*, 720 F.2d 885, 889 (5th Cir.1983).

4. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S.Ct. 568, 576, 50 L.Ed.2d 471, 478 (1977).

5. 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

6. *See id.* at 572–74, 88 S.Ct. at 1736–38, 20 L.Ed.2d at 819–20.

7. 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

8. *Id.* at 146–47, 103 S.Ct. at 1689–90, 75 L.Ed.2d at 719–20.

9. *Id.* at 147–48, 103 S.Ct. at 1690, 75 L.Ed.2d at 720.

10. *Id.* at 147, 103 S.Ct. at 1690, 75 L.Ed.2d at 720.

11. *Davis v. West Community Hosp.*, 755 F.2d 455, 461 (5th Cir.1985).

As a matter of law, therefore, Day's complaint about her individual teaching evaluation and the principal's explanation of it is not protected speech under the first amendment.[12] It follows that, even if the School District's refusal to renew Day's contract was based upon her complaint, and not upon declining enrollment, and was mistaken or unreasonable, she was not entitled to first-amendment-free-speech protection.[13] This conclusion is in accord with the recent Eleventh Circuit decision in *Renfroe v. Kirkpatrick.*[14]

### III.

Day asserts, however, that the first amendment guarantees her the separate and distinct right to petition for a redress of grievances and that this right was violated when the School District decided not to renew her contract. This assumes that, when a government employer deals with its own employees, the protection afforded by the petition clause is entirely discrete from and broader than the shield afforded by the other clauses of the first amendment, a premise that is undermined by the Supreme Court's repeated references to these clauses as being overlapping.

"The right to petition is cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular freedom of expression," the Supreme Court said in *McDonald v. Smith,*[15]

only a few weeks ago. "The Petition Clause," it continued, "was inspired by the same ideals of liberty and democracy that gave us the freedom to speak, publish, and assemble.... These First Amendment rights are inseparable...."[16]

■ When the Court has accorded protection to conduct under the petition clause, other first amendment rights, such as the right to assemble, to associate, or to speak freely on a matter of legitimate public concern, were implicated by the conduct in question and were principal concerns in the Court's decision that the conduct should be protected.[17] None of the Supreme Court cases cited by Day supports the proposition that her speech on a matter of personal concern, the act of an employee addressing her employment supervisors, is protected by the petition clause because she chose to clothe her address to them in a formal grievance, in the absence of any implication of the right to freely assemble or associate.

Other decisions that rest in part on the right-to-petition clause involve the exercise of first amendment rights in addition to the right to petition. For example, *Professional Association of College Educators v. El Paso Community College District*[18] addressed discrimination against union members for exercising their right to associate,[19] and *McBee v. Jim Hogg County, Texas*[20] involved an employee's complaint to county authorities about the unfairness

---

12. *See id.* at 462.

13. *See Connick,* 461 U.S. at 147, 103 S.Ct. at 1690, 75 L.Ed.2d at 720.

14. 722 F.2d 714 (11th Cir.1984).

15. —— U.S. ——, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985).

16. *Id.* at —————, 105 S.Ct. at 2789; *see also id.* at ——, 105 S.Ct. at 2791 (Brennan, J., concurring).

17. *See, e.g., NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 907–13, 102 S.Ct. 3409, 3422–27, 73 L.Ed.2d 1215, 1232–36 (1982); *Smith v. Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 464–66, 99 S.Ct. 1826, 1827–28, 60 L.Ed.2d 360, 363 (1979); *City of Madison v. Wisconsin Employees Relations Comm'n,* 429

U.S. 167, 174–75, 97 S.Ct. 421, 426, 50 L.Ed.2d 376, 384 (1976); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510–11, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642, 646 (1972); *United Mine Workers, District 12 v. Illinois State Bar Ass'n,* 389 U.S. 217, 222–23, 88 S.Ct. 353, 356–57, 19 L.Ed.2d 426, 430–31 (1967); *Adderley v. Florida,* 385 U.S. 39, 41–42, 87 S.Ct. 242, 243–44, 17 L.Ed.2d 149, 152 (1966); *Edwards v. South Carolina,* 372 U.S. 229, 235–38, 83 S.Ct. 680, 683–85, 9 L.Ed.2d 697, 701–03 (1963); *NAACP v. Button,* 371 U.S. 415, 429–30, 83 S.Ct. 328, 336, 9 L.Ed.2d 405, 415–16 (1963); *Thomas v. Collins,* 323 U.S. 516, 531–32, 65 S.Ct. 315, 323–24, 89 L.Ed. 430, 440–41 (1945).

18. 730 F.2d 258 (5th Cir.1984).

19. *Id.* at 263.

20. 730 F.2d 1009 (5th Cir.1984) (en banc).

of a political patronage system of public employment, a matter of public concern that implicates political speech and association. Similarly, *Henrico Professional Firefighters Association, Local 1568 v. Board of Supervisors*,[21] in which a union representative was foreclosed from addressing a municipal body in a limited public forum while other persons were not, also involved the right to associate, assemble, and speak freely. Other lower court cases evidence a similar admixture of the right to petition and the right to speak on matters of public concern.[22]

A few lower court cases decided before *Connick* espouse the proposition that "a petition by a federal employee to one above him in the executive hierarchy is covered by the First Amendment."[23] Aside from the shadow placed on these decisions by *Connick*, we find them distinguishable on their facts or unpersuasive in their reasoning. In *Swaaley v. United States*,[24] decided in 1967, the Court of Claims considered a letter to the Secretary of the Navy, in which an employee who was later discharged from his job in a Navy shipyard complained of favoritism, pay-offs, and wrongdoing in the granting of promotions at the shipyard.[25] That letter, like the one in *Pickering*, addressed a matter of legitimate public concern.

In *Albright v. United States*,[26] decided in 1970, the District of Columbia Circuit held that a meeting of federal employees to complain to an official in the executive hierarchy about a work-related grievance was an exercise of the employees' first amendment right to petition. The federal superior had secretly videotaped the meeting at which the employees met with their personnel officer to complain about a policy decision affecting their whole division to reclassify and downgrade their positions. The Privacy Act prohibited the employer's unauthorized maintenance of records of an employee's exercise of his first amendment rights, and the court, therefore, was called upon to decide only whether the meeting was an *exercise* of the employees' first amendment rights, not whether there was any violation of them. Whether employees who meet to protest to their superior a division-wide policy decision that affects them adversely are protected from being discharged for doing so by the first amendment's petition clause, post-*Connick*, is a matter that we need not here decide. It is sufficient for us to note that *Albright* does not address the discharge of a government employee or the nonrenewal of his contract for the exercise of his first amendment rights. It also does not address whether a government employee who individually makes a personal complaint to his immediate superior and then files a grievance with him is wholly shielded by the right to petition, absent the protection of other first amendment rights. We, therefore, find it inapposite to the case at hand. We also find the 1980 district court decision in *Johnson v. San Jacinto Junior College*[27] unpersuasive both because it was decided before *Connick* and for the reasons given in our earlier discussion of other cases.

*Bowen v. Watkins*,[28] decided by this circuit, does not deal with the issue raised here. Two police officers who were not selected to fill the position of chief of police contended that their request for a hearing before the City Council and their later filing of suit were protected by the first

---

**21.** 649 F.2d 237 (4th Cir.1981).

**22.** *See Anderson v. Central Point School Dist. No. 6*, 554 F.Supp. 600, 606 (D.Or.1982) (letter to Board addressing athletic policies, a matter of public concern), *aff'd*, 746 F.2d 505 (9th Cir. 1984) (distinguishing case from *Connick* and complaint on matters of personal interest); *Pilkington v. Bevilacqua*, 439 F.Supp. 465, 474–75 (D.R.I.1977) (grievances and letters on administration's policies and conduct, a matter of public concern), *aff'd*, 590 F.2d 386 (1st Cir.1979).

**23.** *Swaaley v. United States*, 376 F.2d 857, 863, 180 Ct.Cl. 1 (1967).

**24.** 376 F.2d 857 (Ct.Cl.1967).

**25.** *Id.* at 858.

**26.** 631 F.2d 915 (D.C.Cir.1980).

**27.** 498 F.Supp. 555 (S.D.Tex.1980).

**28.** 669 F.2d 979 (5th Cir.1982).

 

amendment. The trial court's ruling that the hearing request was protected was not appealed.[29] The district court had not specifically ruled on whether the plaintiffs' filing of their suit was protected, but all parties had assumed that it was.[30] Using the balancing analysis required by *Pickering,* we noted that both the City Council hearing and the filing of the suit involved the same amount of disruption of close working relationships and both involved the public interest not only in resolving the controversy but also in ensuring that the proper officers were promoted.[31] *Bowen* did not, therefore, hold that a request for a hearing on a matter of entirely private concern is protected by the petition clause or any other first amendment right.

*Connick* dictates sensitivity to the form and content of the employee's speech.[32] An employee's complaint to her superior on a personal matter is no more a matter of public concern when embodied in a letter to him requesting a hearing than it is when spoken to him. Like the Eleventh Circuit in *Renfroe v. Kirkpatrick,*[33] we are hesitant to elevate such an employee's complaint to the level of constitutional protection merely because she has asserted it in the form of a grievance.

Day's procedural due process claim is not before us on appeal. As we have noted, the State Board of Education has ruled that the School District's policies prohibit retaliation for an employee's exercise of grievance rights and has remanded Day's case to the School District so that it may conduct a hearing on this matter. We, therefore, do not determine whether School District policy gave Day the right to file a grievance in this case or any of the related procedural matters, nor whether Day has a cause of action arising out of the no-reprisal sentence in Policy 4020.

We also find it unnecessary to consider, and intimate no opinion about, the situation that would be presented if a government employee sought assistance from a legislator or a member of the executive branch in a position to accord her relief who was not in the direct supervisory hierarchy.

For these reasons, the judgment of the district court is AFFIRMED.

---

29. *Id.* at 982.

30. *Id.* at 982 n. 2.

31. *Id.*

32. 461 U.S. at 147, 103 S.Ct. at 1690, 75 L.Ed.2d at 720.

33. 722 F.2d 714 (11th Cir.1984).