878 F.2d 836
 51 Empl. Prac. Dec. P 39,209, 5
Indiv.Empl.Rts.Cas. 466
Diana RATHJEN, Plaintiff-Appellee Cross-Appellant,
v.
Barbara H. LITCHFIELD, and the City of Houston,
Defendants-Appellants Cross-Appellees.
 No. 88-2364.
 United States Court of Appeals,
Fifth Circuit.
 July 31, 1989.
 
 Mark Thompson, John E. Fisher, John E. Fisher, Sr., Asst. City Attys., Clarence A. West, City Atty., Houston, Tex., for defendants-appellants cross-appellees.
 David T. Lopez and David Lopez & Associates, Houston, Tex., for plaintiff-appellee cross-appellant.
 Appeal from the United States District Court for the Southern District of Texas.
 Before GARZA, JOLLY and JONES, Circuit Judges.
 EDITH H. JONES, Circuit Judge:
 
 
 1
 Dr. Diana Rathjen, a specialist in industrial organizational psychology, was hired by the City of Houston in 1979 and shortly afterward promoted to Assistant Director of Personnel. In early 1983 she accepted a voluntary demotion to the post of Senior Personnel Administrator, and her working conditions continued to deteriorate after she filed this lawsuit protesting her demotion. Based on her claims of a procedural due process violation and retaliation for exercise of first amendment rights, a jury awarded her $5,000 actual damages and $25,000 punitive damages against Houston's Personnel Director Barbara Litchfield, who was responsible for the demotion and retaliation for which Rathjen filed suit. The court ordered equitable reinstatement of Rathjen to her former position.[1] Raising numerous issues pertaining to the trial court's judgment in favor of Rathjen, the City of Houston appeals. We reverse.
 
 I. BACKGROUND
 
 2
 We condense the lengthy series of events that underlie this action to those most pertinent for analysis. As Assistant Director of Personnel, Dr. Rathjen was in charge of research, career development, compensation and salary administration for the City of Houston. Her peer, defendant Joe Weikerth, was responsible for hiring, workers compensation and safety. Barbara Litchfield was employed by the City in October, 1982.
 
 
 3
 Rathjen and Litchfield immediately began discussing the EEOC and Title VII implications of using subjective interviews as opposed to testing to fill promotional opportunities with the City. These discussions led to unanticipated controversy during Rathjen's appearance before City Council on December 1, 1982, for the routine matter of requesting a room for the test for promotion within the city's Finance and Administration Department. Litchfield directed Dr. Rathjen not to discuss any policy matters or past practices and to talk with City Council only about reserving the room for this test. During the meeting, however, two black members of City Council protested the scheduling of the test and vigorously complained that the Finance and Administration Department had not provided equal employment opportunity in the past. Dr. Rathjen refused to answer questions on this subject, and the council members became even angrier.
 
 
 4
 As a result of this mishap, Dr. Rathjen was summoned to the mayor's office and reprimanded for her performance. One month later, Litchfield asked her to accept a voluntary demotion involving a 10% pay cut. Litchfield and the Mayor had approved this demotion during December. The position to which she was proposed to be demoted required only a bachelor's degree and one year work experience, compared to Dr. Rathjen's doctorate degree and eleven years of experience including service on the Rice University faculty.
 
 
 5
 Dr. Rathjen steadfastly refused to accept voluntary demotion, and at some point she was informed that steps were being taken toward involuntary demotion. She obtained able counsel, who requested negotiations with Litchfield. The jury found that an oral agreement was reached between the parties, whereby Rathjen accepted a form of voluntary demotion. Rather than suffer a 10% pay cut, her salary was reduced by a token amount, and she agreed to report to Joe Weikerth. She contends that Litchfield also agreed to continue making available to her a city automobile, a secretary, and a staff assistant with the title "Personnel Specialist," and that she would remove a letter from Rathjen's personnel file alleging poor performance.
 
 
 6
 The jury found, however, that Rathjen's concessions to Litchfield were unsuccessful. Resolving hotly contested evidentiary disputes, the jury found that Litchfield did not intend to keep her promises and that the promises were made in order to induce Rathjen to give up her rights to a fair hearing. The voluntary demotion and accompanying terms of agreement became effective as of February 17, 1983. Nevertheless, Rathjen testified that Litchfield never complied with the non-monetary aspects of their agreement, and that she became aware of the breach within only six months after the "settlement."
 
 
 7
 Moreover, Rathjen's ability to function successfully within her department continued to be hampered. Prior to Litchfield's arrival as City Personnel Director, Rathjen had received consistently favorable employment evaluations. After her voluntary demotion, however, Rathjen's evaluations deteriorated based on complaints of communication difficulties, low productivity, lack of imagination and similar matters. On at least two occasions, Rathjen employed city civil service procedures which permitted formal grievance over these evaluations.
 
 
 8
 Houston's municipal financial woes eventually required a layoff of Rathjen, which was averted only when the district court, after the jury ruled in her favor, ordered equitable reinstatement to her earlier position as Assistant Personnel Director.
 
 II. DUE PROCESS VIOLATION
 
 9
 As has been noted, the jury found that Litchfield made promises to Dr. Rathjen with the intent to breach them, in order to induce her to forego a fair hearing over her demotion. On the strength of this finding, the trial court entered judgment for Dr. Rathjen and denied the city's motion for judgment n.o.v., holding that these actions deliberately and fraudulently breached her right to procedural due process. Although the parties dispute the sufficiency of evidence to sustain the jury verdict, the fundamental question is whether, assuming the validity of the finding, it sustains a procedural due process claim.
 
 
 10
 A few verities preface our analysis. Dr. Rathjen, a tenured city employee, had a constitutionally protected property interest in her position as Assistant Personnel Director. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The Fourteenth Amendment's due process clause has been held to require "some kind of hearing" before she could be deprived of that interest by termination or demotion. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Our court has additionally stated that a due process violation exists where an employee is constructively discharged by actions of the employer intended to force the employee to sacrifice his due process protection by voluntarily resigning. Fowler v. Carrollton Public Library, 799 F.2d 976 (5th Cir.1986); Findeisen v. Northeast Independent School Dist., 749 F.2d 234 (5th Cir.1984), cert. denied 471 U.S. 1125, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985); Bueno v. City of Donna, 714 F.2d 484 (5th Cir.1983).
 
 
 11
 According to Rathjen, this case follows directly in the path of the constructive discharge due process cases. Litchfield had no authority to demote her without a hearing. By entering into a settlement agreement with Litchfield, Dr. Rathjen says she agreed to forebear pursuing a grievance hearing through the City Civil Service Commission.[2] This agreement was, however, fraudulently induced by Litchfield. Dr. Rathjen characterizes the City's defense as implying that even though it could not demote her without a fair hearing it could do so if Dr. Rathjen failed to ask for the hearing because of fraudulent representations.
 
 
 12
 Several subtle flaws burden this argument, even acknowledging, as we must, the soundness of the pertinent jury finding. Dr. Rathjen testified several times that she was fully aware of the City's employee grievance procedures and that these allowed her to contest virtually any "injustice." She believed as early as July 1983, that Litchfield was not living up to their agreement. She was aware that she had the right to file a grievance over this breach of faith and potentially to obtain full reinstatement from the City Civil Service Commission. Neither then nor later, however, did she ever pursue a grievance concerning the settlement agreement.[3] Instead, she filed this lawsuit in December 1984.
 
 
 13
 The availability of a grievance and hearing procedure which would have enabled Dr. Rathjen to contest the circumstances of her voluntary demotion or her unsuccessful settlement agreement renders this a different case from our constructive discharge cases. Those cases rested on the premise that once an employee has voluntarily resigned, no procedural remedy is available from his former employer. Indeed, in Fowler, 799 F.2d at 979, and Findeisen, 749 F.2d at 236, the employees sought but did not obtain post-termination hearings. Those employees, by voluntarily resigning, lost any due process protections they would otherwise have had, but Dr. Rathjen never made such a sacrifice.
 
 
 14
 Technically, Dr. Rathjen's right to insist upon a hearing before demotion was thwarted when her voluntary demotion was procured by fraud. This is a judgment rendered purely in hindsight, however, for if Litchfield had carried through with her promises, the settlement would have been satisfactory to Dr. Rathjen. We should be reluctant to discourage compromise of public employer-employee disputes by suggesting that whenever such a dispute is resolved informally in order to forestall formal hearing procedures, the failure of this process to satisfy the employee automatically threatens a procedural due process violation. Rather, we must consider the acts that follow the parties' informal agreement and the procedural remedies then available. Here, Dr. Rathjen admitted that she could have pursued a grievance against the City of Houston for Litchfield's failure to comply with their agreement.
 
 
 15
 This circumstance causes the case to fall within our recent jurisprudence holding that no denial of procedural due process occurs where a person has failed to utilize the state procedures available to him. In Myrick v. City of Dallas, 810 F.2d 1382 (5th Cir.1987), an employee fired by the City questioned the adequacy of her post-deprivation remedies, although she did not attempt to pursue them. We held:
 
 
 16
 Of course, she was free to skip state remedies and proceed directly to federal court to vindicate state deprivation of her constitutional right; exhaustion of remedies is not ordinarily required. But she cannot skip an available state remedy and then argue that the deprivation by the state was the inadequacy or lack of the skipped remedy.
 
 
 17
 Id. at 1388. In Galloway v. State of Louisiana, 817 F.2d 1154 (5th Cir.1987), an employee afforded a pre-termination hearing did not attend the hearing because he was in the hospital. Later, rather than request a hearing, he bypassed the administrative procedure for an investigation alternative. We rejected his procedural due process claim, holding that "an employee cannot ignore the process duly extended to him and later complain that he was not accorded due process." Id. at 1158. Most recently, in Pope v. Mississippi Real Estate Commission, 872 F.2d 127 (5th Cir.1989), we rebuffed a challenge to rulings or interpretations of the Commission's regulations, where the plaintiff had sought no administrative or state court remedy that was statutorily available.[4]
 
 
 18
 Because Dr. Rathjen had a readily accessible administrative remedy as soon as she believed Litchfield had defaulted on their settlement agreement, this case also appears to fall within the purview of Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The evident purpose behind the City's employee grievance procedures is to facilitate prompt remedies for perceived injustices or unfairness. To the extent Litchfield's deceptive offer of settlement or her failure to live up to the informal agreement were "random, unauthorized acts" contrary to city personnel guidelines, Dr. Rathjen had an adequate post-deprivation remedy. See Schaper v. City of Huntsville, 813 F.2d 709 (5th Cir.1987) (alleged bias in pretermination hearing did not cause due process violation because (1) it resulted from "random unauthorized act" of city officials and (2) administrative post-termination remedy was available).
 
 
 19
 We would finally note that other circuits have refused to entertain procedural due process claims of employees who did not avail themselves of administrative hearing procedures. Riggins v. Bd. of Regents, 790 F.2d 707, 711-12 (8th Cir.1986); Dwyer v. Regan, 777 F.2d 825, 834-35 (2d Cir.1985), modified on other grounds, 793 F.2d 457 (2d Cir.1986); Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir.) cert. denied, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982); Correa v. Nampa School Dist. No. 131, 645 F.2d 814, 817 (9th Cir.1981).
 
 
 20
 Accepting Dr. Rathjen's argument in this case would lead to untoward consequences. Although Perry v. Sinderman, 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570, 580 (1972) holds only that an employee is entitled to a hearing if he requests one, the district court's theory virtually compels the parties to resort to a hearing in any case where adverse personnel action may be contemplated. This is because any informal settlement carries the potential claim for denial of procedural due process if an employee becomes unhappy with the terms of the settlement. Second, adoption of Rathjen's theory would encourage employees who resign or accept demotions to file federal lawsuits rather than pursue available administrative remedies. Third, a rule providing that employees who are "tricked" into resigning or accepting a demotion need not request an available hearing would give that class of employees arguably greater rights than those who are dealt with involuntarily and must request a hearing. Thus, notwithstanding the jury's finding that Dr. Rathjen was fraudulently induced to accept a voluntary demotion, we cannot hold that she was deprived of a constitutional right to procedural due process because she failed to resort to the city's grievance procedure for a remedy.
 
 III. RETALIATION CLAIM
 
 21
 The district court entered judgment against Litchfield on Rathjen's claim that Litchfield inaccurately evaluated her performance because she had opposed her demotion and filed this lawsuit.[5] Litchfield appeals the district court's refusal to grant her motion for judgment notwithstanding the verdict on essentially two grounds: (1) that there was insufficient admissible evidence that Litchfield was involved in any inaccurate evaluation of Rathjen; and (2) that Rathjen's activity in opposing her demotion and filing this lawsuit are not "protected activities" under the first amendment of the United States Constitution or 42 U.S.C. Sec. 1981. We pretermit discussion of the sufficiency of the evidence because the activities identified in Jury Question Number 5 do not give rise to a federal retaliation claim.
 
 
 22
 The Supreme Court has instructed that the first amendment prohibits a government employer from taking actions which were designed to "suppress the rights of public employees [to] participat[e] in public affairs." Connick v. Myers, 461 U.S. 138, 145-46, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). Yet, in Connick, the Court also established that the first amendment does not prevent a government employer from taking action in response to an employee's expression that does not touch upon a matter of public concern:
 
 
 23
 Pickering [v. Bd. of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) ], its antecedents, and its progeny lead us to conclude that if [the plaintiff's actions] cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for us to scrutinize the reasons for her discharge. When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.
 
 
 24
 103 S.Ct. at 1690 (footnote omitted). The Court noted that "[p]erhaps the government employer's dismissal of the worker may not be fair," but that that did not ordinarily violate the constitution and subject the employment decision to judicial review. Id.
 
 
 25
 Relying on Connick, we have held that, "the courts will not interfere with personnel decisions 'when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest.' " Page v. DeLaune, 837 F.2d 233, 237 (5th Cir.1988). See also Day v. South Park Independent School Dist., 768 F.2d 696, 700 (5th Cir.1985), cert. denied, 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). In Terrell v. Univ. of Texas System Police, 792 F.2d 1360, 1362 (5th Cir.1986), we stated that another test was "to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as a citizen or primarily in the plaintiff's role as employee." (footnote omitted), cert. denied 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). The question in this case is whether Rathjen's opposition to her demotion or her filing of this lawsuit are "matters of public concern" or are "matters only of personal interest."[6] Rathjen's speech and actions fall in the latter category.
 
 
 26
 The law is no different where the act which allegedly gave rise to the retaliation claim is the filing of a grievance or a lawsuit. Brinkmeyer v. Thrall Independent School Dist., 786 F.2d 1291, 1296 (5th Cir.1986); Day, 768 F.2d at 701-02. The facts of Day are quite similar to the facts of this case and are dispositive of Rathjen's retaliation claim. In Day, an untenured school teacher alleged that her contract was not renewed because "she complained about her [principal's unfavorable] performance evaluation and [later] filed a grievance." Id. at 697. We affirmed the district court's conclusion that "her actions, whether viewed as speech, petitioning, or both, related only to her superior's employment decisions that affected her in a purely personal manner, not to matters of political, social, or community concern." Id. Day forecloses a constitutional basis for Dr. Rathjen's retaliation claim.
 
 
 27
 Rathjen alternatively turns to 42 U.S.C. Sec. 1981 in pursuit of a federal right. However, Sec. 1981 is equally barren. Section 1981 is a civil rights statute which "prohibits racial discrimination in the making and enforcement of private contracts." Patterson v. McLean Credit Union, --- U.S. ----, 109 S.Ct. 2363, 405 L.Ed.2d 132 (1989). We have also held that Sec. 1981 protects employees from retaliation in response to an employee's EEOC charge or civil rights suit alleging racial discrimination. Goff v. Continental Oil Co., 678 F.2d 593, 598 (5th Cir.1982). See also Irby v. Sullivan, 737 F.2d 1418, 1430 n. 22 (5th Cir.1984). Even if Goff and Irby survive Patterson, id. --- U.S. at ----, 109 S.Ct. at 2372-73 (excluding from Sec. 1981 coverage an employer's post-contract formation conduct), Rathjen could not allege that retaliation was taken in response to a racial discrimination claim she filed because she never filed such a claim.
 
 
 28
 Rathjen's attempt to renew her claim that she was injured because she opposed the use of subjective criteria in minority hiring fails for two reasons. First, the jury found otherwise. More importantly, her retaliation claim has nothing to do with her opinion on the subject. Accordingly, we must reverse the judgment for Rathjen on her retaliation claim against Litchfield. Since we reverse on the due process claim and the retaliation claim, we need not address either Litchfield's right to qualified immunity, or the city's objection to an award of attorneys' fees that included services rendered by Dr. Rathjen's counsel in certain administrative proceedings.
 
 IV. APPELLEE'S CROSS-POINTS
 
 29
 Dr. Rathjen cross-appealed two issues: the trial court's failure to enter judgment on the jury verdict awarding $25,000 in punitive damages against the Mayor of Houston; and its rejection of a motion for new trial on Rathjen's first amendment claim. The first issue is wholly unsustainable, because the jury found no basis for liability against the mayor, and liability is a sine qua non of a damage award. Likewise, the trial court did not abuse its broad discretion in failing to grant a new trial on an issue decided adversely to Rathjen by the jury and supported by the evidence. Conway v. Chemical Leaman Tank Lines, 610 F.2d 360, 363 (5th Cir.1980).
 
 V. CONCLUSION
 
 30
 For the foregoing reasons, we REVERSE the judgment on the due process and retaliation claims and REMAND this action to the district court for proceedings in accordance herewith.
 
 
 
 [1]
 Our resolution of the case makes it unnecessary to decide whether the district court had authority to order equitable reinstatement of Dr. Rathjen as a remedy for a procedural due process violation. But see Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972); Neuwirth v. Louisiana State Board of Dentistry, 845 F.2d 553, 559 n. 12 (5th Cir.1988) ("another hearing ... is the remedy for due process violations ...")
 
 
 [2]
 Rathjen acknowledged at trial that she was aware that she had a right to a hearing before the City Civil Service Commission to contest an involuntary demotion. See Footnote 3, infra
 
 
 [3]
 On cross-examination, Rathjen testified as follows in response to defense counsel questioning:
 Q And I would assume, Dr. Rathjen, that since you had been in the Personnel Department for a number of years that you were fairly familiar with the Civil Service Rules,--
 A Yes.
 Q --Is that correct?
 A Yes.
 Q Were you aware, specifically, that--what the Civil Service Rule provisions were regarding involuntary demotion?
 A Yes.
 Q And you were aware that you did have a right to a hearing?
 A For an involuntary demotion, yes.
 Q And in fact, Dr. Rathjan, there's also some other provisions in the Civil Service Rules, one in particular regarding grievances. You are, obviously, familiar with that particular provision, is that correct?
 A Yes. I'm familiar with the grievances.
 Q Are you aware that there is also a civil service rule which permits the Civil Service Commission at any time to investigate any unfairness or injustice in the city civil service system?
 A Yes.
 * * *
 Q Now, in this lawsuit, you're claiming that Ms. Litchfield has made some promises to you which you're alleging that she broke. At any time have you filed a grievance regarding the breaking of those particular [promises] ...?
 A No.
 Q And you never sought Civil Service Commission review of these purported breaches of Ms. Litchfield's promises, have you?
 A No.
 Q You were fully aware that you had the right to do that?
 A Yes.
 Q And you were also aware that under Section 14-189, which we've discussed previously, that if the Commission found that there was merit to a claim that an employee had been treated unfairly that the Commission could order the employee reinstated in their position or may hold or basically correct the unfairness? You're aware that that is a provision of the Commission's investigatory powers, weren't you?
 A Yes.
 
 
 [4]
 The City cites In re Selcraig, 705 F.2d 789 (5th Cir.1983) in its favor. We find Selcraig distinguishable at least in part. First, the plaintiff in Selcraig "[did] not request[ ] a hearing since his resignation, nor [did] he formally ask[ ] that his resignation be withdrawn." The court relied on this fact in ruling that "he has not shown any factual basis for his charge that he has been denied a hearing at any time." 705 F.2d at 797. Moreover, in holding that an employee's due process rights are not violated when he fails to request an available due process hearing, Selcraig qualified this statement by the caveat that this is true "unless he can set aside the waiver contained in his resignation ..." 705 F.2d at 797. That, of course, is precisely what Dr. Rathjen did here
 
 
 [5]
 Jury Question Number 4 asked: "Do you find from a preponderance of the evidence that Defendants [Weikerth and Litchfield] inaccurately evaluated Plaintiff's performance?" The jury answered yes as to both defendants. The district court overruled defendants' objection to the disjunctive form of Jury Question Number 5. Because neither activity gives rise to a federal retaliation claim, the form of the question is irrelevant. Jury Question Number 5 asked: "Do you find from a preponderance of the evidence that Plaintiffs' opposition to her demotion or the filing of this lawsuit, or both, were a substantial motivating factor in Defendant[s'] inaccurately evaluating Plaintiff's performance?" The jury answered yes as to Litchfield only
 
 
 [6]
 Rathjen argues that her discussion of subjective criteria in the evaluation of minority applicants for city jobs is a matter of public concern. That discussion, however, is not the basis of Rathjen's retaliation claim. She alleged in her retaliation claim that Litchfield improperly evaluated her because of her objection to a demotion and/or the filing of this lawsuit. She also alleged that the original demotion plan was in retaliation for the content of her public speech before Houston's City Council, but the jury rejected that claim