# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00761-COA

PAUL JOHNSON                                                    APPELLANT

v.

CITY OF CANTON, MISSISSIPPI; BOARD OF                          APPELLEES
ALDERMEN FOR THE CITY OF CANTON;
AND THE ZONING COMMISSION FOR THE
CITY OF CANTON, MISSISSIPPI

DATE OF JUDGMENT:            05/09/2014
TRIAL JUDGE:                 HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:   MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      KIM T. CHAZE
ATTORNEY FOR APPELLEES:      KIMBERLY CELESTE BANKS
NATURE OF THE CASE:          CIVIL - OTHER
TRIAL COURT DISPOSITION:     GRANTED SUMMARY JUDGMENT IN
                             FAVOR OF APPELLEES
DISPOSITION:                 AFFIRMED - 11/24/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**MAXWELL, J., FOR THE COURT:**

¶1.     Paul Johnson appeals the grant of summary judgment in favor of the City of Canton,

Mississippi; its Board of Aldermen; and its Zoning Commission.  Disappointed that the

Board denied his request for a special exemption to build a house on what the Zoning

Commission deemed a noncompliant, landlocked lot, Johnson filed a "section 1983" suit in

the Madison County Circuit Court.  He alleged the City, through its Board and Zoning

Commission, violated his equal-protection and due-process rights by making a racially

discriminatory and arbitrary and capricious decision.  But to survive summary judgment,

Johnson had to produce more than mere allegations. He had to put forth sufficient evidence to establish triable equal-protection and due-process claims.

¶2. Like the circuit court, we find Johnson produced zero evidence that he was treated differently than similarly situated property owners—a necessary element of an equal-protection claim. No other property owners applied for, let alone were granted based on their race, the same special exemption Johnson was denied.

¶3. We also find Johnson failed to establish a due-process claim. The Board's zoning-related decision was "quasi-legislative." This means, as a matter of federal constitutional law, there can be no substantive-due-process violation if it was "at least debatable" that the City had a conceivable rational basis for its decision. Conceivably, the Board denied Johnson a building permit because his proposed home would not be accessible by fire trucks and other services. Because it is at least debatable this decision was rationally related to a legitimate government interest—namely, resident safety and welfare—the City was entitled to a judgment as a matter of law on this claim.

¶4. We thus affirm the judgment dismissing Johnson's equal-protection and due-process claims.

**Facts and Procedural History**

**I. Johnson's Requests for Special Exception**

**A. *First Request***

¶5. Johnson's father, Malcolm Johnson (Malcolm), owns a duplex on East Dinkins Street

in Canton. Johnson bought the land behind Malcolm's duplex. And in November 2005, he cleared the lot in preparation to build a home. The City initially granted him a building permit. But soon after, it issued a stop-work order before the foundation was poured. The reason the City told him to cease construction was because it learned—through Johnson's "backyard" neighbor, Alderman Charles Weems—that Johnson's lot had no access to a city street. Instead, the only way to get from Johnson's lot to East Dinkins Street was to use an easement across his father Malcolm's driveway.

¶6. Under section 1.36.02 of the Unified Development Code for the City of Canton, Mississippi:

> Every building or structure hereafter constructed, moved, or structurally altered shall have direct access to a public (dedicated) street and shall be so located as to provide safe and convenient access for servicing, fire protection, and required off-street parking.

Since Johnson's lot lacked both direct and safe-and-convenient access to a public street, he was told he would have to obtain a special variance from the City's Zoning Commission to build his proposed home. So in December 2005 he appeared before the Zoning Commission. The Commission voted to deny his request for a special exception to the ordinance.

¶7. Johnson appealed the Commission's decision to the Board of Aldermen. He appeared before the Board in the January 2006 meeting. According to Johnson, at some point during this meeting, Alderman Weems told him he would have to build a street to his lot and publicly dedicate it before building a home on his lot. But that was not the Board's official action. Johnson had told the Board he no longer had just an easement. According to

3

Johnson, he had recently purchased a fifteen-foot strip of property connecting his lot to East Dinkins Street. Because the Zoning Commission's decision had been based on Johnson only having an easement, the Board sent the matter back to the Zoning Commission to decide if Johnson's ownership of his father's driveway changed its decision.

### B. Second Request

¶8. In June 2006, the Zoning Commission's attorney sent the Commission a letter advising that the fifteen-foot strip met the direct-access requirement of the city ordinance. (The letter was silent about the convenient-access requirement.) The Commission took up the matter at a special meeting held in September 2006. Once again the Commission voted to deny Johnson a permit. In the Commission's view, the fifteen-foot strip, while perhaps technically compliant with the direct-access requirement, skirted the "intent" of the ordinance. The ordinance was aimed at preventing the construction of houses behind other houses, resulting in unsafe and inconvenient emergency-services access and off-street parking.

¶9. Johnson made a second appeal to the Board, which tabled his request. Because Johnson presented no proof to back up his claim that he now had direct access to East Dinkins Street, the Board asked Johnson to present at their next meeting a scaled drawing of his newly configured lot. So in December 2006, Johnson reappeared before the Board with the requested drawing. Despite the drawing, the Board, in a three-to-one vote, adopted the recommendation of the Zoning Commission and denied Johnson's application for a special

4

exception.

### C. Third Request

¶10.    A year and half later, in July 2008, Johnson went back to the Zoning Commission. While the record is not exactly clear what happened in the interim, Johnson alleges he bought an additional "strip" on the other side of his father's lot to provide access to East Dinkins Street. But in the Commission's view, Johnson's lot still did not give sufficient access for fire trucks to get to Johnson's proposed house.   Plus, since the strips would be private driveways, not public streets, the City could not keep Johnson from blocking these driveways with parked cars and preventing access to his house.  Thus, the Commission determined Johnson's lot was still noncompliant.  For the third time, the Commission denied Johnson's request for a special exception to build a "house behind a house." And a month later, the Board followed the Commission's recommendation and denied Johnson's appeal.

## II.    Johnson's Lawsuit

¶11.    Ten months later, in May 2009, Johnson filed suit in the Madison County Circuit Court.[1] He named the City of Canton, the Board of Aldermen, and the Zoning Commission as defendants.  Johnson brought his claim under title 42, section 1983 of the United States Code (2012).  This section creates a civil cause of action for the deprivation of constitutional rights.  42 U.S.C. § 1983.   While the Madison County Circuit Court had concurrent

---

[1] The record is unclear whether Johnson also appealed the Board's decision to the circuit court through a separate bill of exceptions.

jurisdiction to hear his section 1983 claim, to be successful, Johnson had to show the City violated a federally protected right. *Starnes v. City of Vardaman*, 580 So. 2d 733, 737 (Miss. 1991).

¶12. The two federally protected rights Johnson claimed were violated were his Fourteenth Amendment rights to due process of law and equal protection under the law. *See* U.S. Const. amend XIV. Johnson alleged the City "arbitrarily and capriciously" denied his request to build a home, in violation of his due-process rights. He also claimed the Board had never denied anyone else's request to build a home. He attributed his different treatment to the fact he is African American.

¶13. After discovery, the City, Board, and Zoning Commission filed a motion for summary judgment. Johnson had provided the names of nine homeowners he claimed were permitted to build a "house behind a house." But Johnson gave no details about when these homes were constructed. Nor did he specify why they too were in violation of the ordinances's direct-and-convenient-access requirement. He also failed to present any evidence the homeowners had applied for and were granted the same special exemption Johnson had unsuccessfully sought. The City offered evidence from its building official that eight of the nine homes were built between 1930 and 1960. The ninth home was built in 1978, with the current owners, the McGees, adding on a room in 2008.

¶14. The building official opined Johnson would need a special permit because the proposed home site did not conform to the City's street-frontage requirement. The City also

cited Johnson's deposition where he admitted he had combed through the City records and found *no* application for the same special exemption by any Caucasian homeowners.

¶15.    In response, Johnson argued summary judgment was improper because whether his lot had direct access to East Dinkins Street was a "material fact dispute." He cited the 2006 letter by the Zoning Commission's attorney, in which the attorney wrote that Johnson's lot was now compliant with the direct-access requirement. He also pointed to the fact white homeowners were allowed to add a room to their home in 2008. And he asserted "no other person in the history of Canton was told they had to build a street"—presumably a reference to Alderman Weems's suggestion during the January 2006 Board meeting.

¶16.    After a hearing in April 2013, the circuit court ruled summary judgment should be granted. But the final order was not entered until November 2013. Johnson then filed a Rule 59 motion to alter the judgment. *See* M.R.C.P. 59(e). In response to this motion, the circuit court entered an amended order, clarifying his reasons for granting summary judgment. Johnson timely appealed.

## Discussion

### I.    Immunity

¶17.    On appeal, one of Johnson's claimed errors was that the circuit court erroneously granted the City immunity. But this is a red herring. The circuit court did not grant immunity to the municipality itself. Instead, the amended order was clear that summary judgment based on immunity was only being granted on Johnson's claims brought against

7

the members of the Board of Aldermen and Zoning Commission as "individual defendants."[2]

On appeal, Johnson does not contest that Board and Zoning Commission members, in their individual capacities, are immune. Rather, he insists his claims were against the City of Canton—which encompasses the Board of Aldermen and Zoning Commission. Since the City itself was not granted immunity, this is a nonissue.

## II. Section 1983 Claims

¶18. The circuit court's reason for granting summary judgment in the City's favor was not that the City was immune from a section 1983 claim. Summary judgment was granted because Johnson failed to establish triable 1983 claims.

¶19. Section 1983 is not a source of substantive rights but instead provides the mechanism for vindicating those rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Under section 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within

---

[2] The circuit court ruled that the members of "the Board of Aldermen for the City of Canton [were] absolutely immune from liability under § 1883 for their legislative activities," citing *Bogan v. Scott-Harris*, 523 U.S. 44, 48-56 (1998), and *Bond v. Marion County Board of Supervisors*, 807 So. 2d 1208, 1220-21 (¶¶44-46) (Miss. 2001). The amended order further stated:

> To the extent the Complaint in this cause is against the Board of Aldermen (and the members of the Zoning Commission to the extent they were involved in the vote of the Board of Aldermen that is the basis of this complaint) as "individual defendants," "employed by the City of Canton," for any violation of § 1983, the Court finds that summary judgment should be granted.

8

the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. So for his section 1983 claims to survive summary judgment, Johnson had to show he was deprived a federal constitutional right by a person acting under color of state law. *See Smith v. Young Men's Christian Assoc. of Montgomery, Inc.*, 462 F.2d 634, 647 (5th Cir. 1972).

¶20. For purposes of section 1983, the United States Supreme Court has deemed a local governing body like the City of Canton a "person." So cities like Canton are susceptible to a section 1983 lawsuit for allegedly unconstitutional actions, implemented "through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[.]" *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Here, Johnson does not claim the city ordinance, which required not only direct access to a city street but also safe and convenient access for servicing, fire protection, and off-street parking, is unconstitutional. Rather, he suggests the City's *application* of the ordinance to his property violated his constitutional rights. Specifically, Johnson asserted the City's decision violated his equal-protection rights and/or deprived him of due process of law. *See* U.S. Const. amend XIV.

### A. Summary-Judgment Standard

¶21. The City moved for—and was granted—summary judgment on both of these claims. As the summary-judgment movant, the City bore "the burden of persuading the trial judge

that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, [it was] entitled to judgment as a matter of law." *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶11) (Miss. 2013) (quoting *Palmer v. Biloxi Reg'l Med. Ctr., Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990)). But Johnson had a burden too—to produce evidence to create triable equal-protection and due-process claims. *See id.* at 88-89 (¶11).

¶22. According to Johnson, the circuit court, in granting the City's summary-judgment motion, ignored triable fact issues. Johnson is correct that material factual disputes are for trial juries to decide, not a judge at the summary-judgment stage. *See Duckworth v. Warren*, 10 So. 3d 433, 439 (¶16) (Miss. 2009). And close evidentiary calls should lean in the nonmovant's favor. *Smith v. Waggoners Trucking Corp.*, 69 So. 3d 773, 777 (¶16) (Miss. Ct. App. 2011). But when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment "*shall be rendered*." *Karpinsky*, 109 So. 3d at 88 (¶10) (emphasis added) (quoting M.R.C.P. 56(c)).

¶23. We review the grant of summary judgment de novo, "viewing the evidence in the light most favorable to the party against whom the motion has been made." *Id.* at (¶9) (citation omitted). And in doing so, we reach the same conclusion as the circuit court. Even when the evidence is viewed in a light most favorable to Johnson, we find he still failed to produce sufficient evidence to create triable claims that his equal-protection and/or due-process rights

10

were violated.

### B. Equal Protection

¶24. Under the Fourteenth Amendment, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. A violation of this clause "occurs only when, inter alia, the governmental action in question classifies between two or more relevant persons or groups." *Johnson v. Rodriguez*, 110 F.3d 299, 309 (5th Cir. 1997) (citation omitted). When claiming the classification was based on racial discrimination—as Johnson does here—"the plaintiff must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (citation omitted).

¶25. Here, Johnson presented no evidence to establish he was treated differently from any other similarly situated landowner in Canton. He *alleges* nine white property owners have "houses behind houses." But at the summary-judgment stage, "mere allegations" are not enough. *Suddith v. Univ. of S. Miss.*, 977 So. 2d 1158, 1167 (¶9) (Miss. Ct. App. 2007). Johnson had to produce evidence to support his allegations, which he failed to do. *See id.*

¶26. In response, the City presented evidence that all homeowners Johnson listed as being treated differently built their homes at least three decades or more prior to Johnson's building request. These homes were built *before* the City adopted the present version of its Unified Development Code—the code containing the ordinance mandating homes have convenient

11

access to a public street. So none of these homes were granted a special exemption by the Board. Nor were their owners granted an exemption based on their race.

¶27. The only evidence of recent building taking place was the extra room the McGees added to their "mother-in-law suite" in 2008. And there is no record evidence this construction took place on a noncompliant lot. There is also no evidence to support Johnson's claim that race factored into the McGees being allowed to build, while he was issued a stop-work order. The City's Building Officer testified the McGees were not required to obtain a special exemption because they were merely adding square footage to an existing structure. They did not build a brand new house on a noncompliant lot. So the McGees were not "similarly situated individuals" that received different treatment than Johnson.

¶28. Johnson also makes much of the supposed fact "no other person in the history of Canton was required to build a road." But he also has no evidence the City has ever permitted any person to build a house that has no access to a road. Because Johnson has no evidence the City distinguished his application for a special exception from any other person—let alone a person of a different race—he failed to meet his burden of production on his equal-protection claim.

¶29. Thus, we affirm the circuit court's grant of summary judgment on Johnson's equal-protection claim.

### C. Due Process

12

¶30.   The Fourteenth Amendment also prohibits a State from "depriv[ing] any person of life, liberty, or property, without due process of law."

### 1.   Property Interest

¶31.   While loss of property or liberty is not necessary for an equal-protection claim, the loss of a property or liberty interest is fundamental to a due-process claim.  *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988).

¶32.   Johnson is not claiming the property he lost was his right to a special exemption.  In other words, he is not arguing he had a right to build a house on a nonconforming lot.  *Cf. Shelton v. City of Coll. Station*, 780 F.2d 475, 479 (5th Cir. 1986) (questioning whether a city, by refusing to grant property owners a variance to an undisputedly valid zoning ordinance, deprived the owners of any recognized property interest).  Instead, he claims he had a right to build a house because his lot in fact conformed to the ordinance's requirements.   According to him, by deeming his lot noncompliant, the City deprived him of the use and enjoyment of his property.

¶33.   Johnson is right that the loss of use and enjoyment of real property is a recognized property interest.  *See Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2001).  So the pivotal question becomes—Has Johnson shown this deprivation occurred "without due process of law"?

### 2.   Rational-Basis Review

¶34.   Due process in its most basic form requires notice and an opportunity to be heard.

13

*Matthews v. Eldridge*, 424 U.S. 319, 348 (1976). On appeal, Johnson does not claim he was denied this type of "procedural" due process. Still, while one generally does not have to exhaust administrative remedies before filing a section 1983 claim, procedural-due-process claims are an exception. *Rathjen v. Litchfield*, 878 F.2d 836, 839-40 (5th Cir. 1989). Johnson could not argue he was denied an opportunity to be heard without first exhausting the appellate process. *See id.* And here, there is no evidence Johnson appealed the Board's decision through a bill of exceptions prior to filing his section 1983 suit.

¶35.    What Johnson is urging is a "substantive" due-process claim. *See Brennan*, 834 F.2d at 1255-57 (explaining the various "strands" of substantive due process). "The conceptual essence of 'substantive' due process is the notion that the Due Process Clause—in addition to setting procedural minima for deprivations of life, liberty, or property—bars outright 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Id.* at 1255 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

¶36.    "In the context of land[-]use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrary or capricious." *Simi Inv. Co.*, 236 F.3d at 249 (citation omitted). "Arbitrary and capricious" takes on a specific meaning in this context. *See Shelton*, 780 F.2d at 482-83 (contrasting review of an administrative decision with constitutional review of a "quasi-legislative" decision). "[W]hen challenges to . . .

14

land-use decisions aspire to constitutional stature, we view those decisions as 'quasi-legislative' in nature, and thus sustainable against a substantive due process challenge if there exists therefor 'any conceivable rational basis.'" *FM Props. Oper. Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir.1996) (quoting *Shelton*, 780 F.2d at 477). "In other words, such government action comports with substantive due process if the action is rationally related to a legitimate government interest." *Id.* (citations omitted).

¶37.    So the sole pertinent question is "whether a rational relationship exists between the policy and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation." *Id.* (emphasis added). Johnson latches to the word "debatable." He argues, if a question is debatable, that means there is a material disputed fact issue, making summary judgment improper. *See* M.R.C.P. 56(c). But whether a rational relationship exists is a *question of law* for the court, not a question of fact for the jury. *Hidden Oaks, Ltd. v. City of Austin*, 138 F.3d 1036, 1044 (5th Cir. 1998). "The key inquiry is whether the question is *at least debatable*. If it is, there is no denial of substantive due process *as a matter of federal constitutional law*." *Shelton*, 780 F.2d at 483 (emphasis added and internal citation omitted).

¶38.    We find it is at least debatable that the Board's decision to deny Johnson a building permit was rationally related to a legitimate government interest. The ordinance was designed to promote the welfare and safety of Canton residents. It does so by ensuring that fire trucks and other emergency and service vehicles could access the City's homes and

15

buildings. We emphasize Johnson has not challenged the ordinance or argued that it does not in fact promote a legitimate government interest. So that issue is not in play. What we have before us is the Zoning Commission's determination Johnson's proposed building site would not provide such access. It is true the fifteen-foot strip technically connected his lot to a public street. But this long, thin strip did not give the safe and convenient access the ordinance required. In particular, because it would be a private driveway, the City could not ensure this narrow strip would remain open for emergency vehicles. The Board agreed with the Zoning Commission and followed its recommendation.

¶39. In *Hidden Oaks*, the Fifth Circuit emphasized substantive-due-process analysis of a zoning decision has a "limited range." *Id.* Zoning-board decisions "do not violate substantive due process unless the court finds no 'conceivable rational basis' on which the board might have based its decision." *Id.* (quoting *Shelton*, 780 F.2d at 477). Here, there was a "conceivable rational basis" for the Board's decision that Johnson's proposed home did not comply with the direct-and-convenient-access ordinance. The Board did not believe the house could be "so located as to provide safe and convenient access for servicing, fire protection, and required off-street parking." So its decision, as a matter of law, was not "arbitrary" and could not form the basis of a viable substantive-due-process claim.

¶40. Like the property owner in *Hidden Oaks*, Johnson "does not appear to appreciate the limited range of a substantive due process analysis." *Hidden Oaks*, 138 F.3d at 1044. Nowhere in his substantive-due-process claim does he argue the City's decision was not

16

rationally related to a legitimate governmental interest. Instead, Johnson simply relies on the fact the Zoning Commission's attorney found his newly configured lot complied with the direct-access requirement—though he omits that the letter did not say his lot met the safe-and-convenient-access requirement. He also points to Alderman Weems's *unofficial suggestion* that Johnson could build a road and publicly dedicate it. But the nature of substantive-due-process review is limited strictly to asking if the Board's decision was rationally related to a *conceivable* legitimate objective. And here, Johnson has failed to articulate why it was not. Therefore, his due-process claim also fails and was likewise properly dismissed on summary judgment.

¶41. **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**