Debra McDONALD and Clyde Williams, Plaintiffs,

v.

CITY OF FREEPORT, TEXAS, et al., Defendants.

Civ. A. Nos. G-92-334, G-92-335.

United States District Court, S.D. Texas, Galveston Division.

Oct. 5, 1993.

---

Darah S. Headley, Houston, TX, for plaintiffs.

Wallace N. Shaw, Freeport, TX, for defendants.

## MEMORANDUM AND ORDER

KENT, District Judge.

Pending before the Court are two motions to dismiss the complaints of Plaintiffs Debra McDonald and Clyde Williams pursuant to Federal Rule of Civil Procedure 12(b)(6) or alternative motions for summary judgement pursuant to Rule 56(c) by Defendant City of Freeport (City) and Defendants Freeport Police Chief Charles Bankston and former Police Captain Larry Bullard. For the reasons stated below, each and all of Defendants' motions are DENIED.

This case was bought under 42 U.S.C. § 1983 and arises out of the alleged wrongful termination of Plaintiff McDonald, who was a dispatcher with the City's police department, and the alleged involuntary retirement of Plaintiff Williams, who was a Major within the City's police department.

### I. Facts

In 1989, the City of Freeport Police Department made an internal inquiry into the alleged unauthorized issuances of warrants by dispatchers. Along with others, Plaintiff McDonald signed a statement at that time which indicated that she did not participate in the unauthorized issuances. Plaintiff Williams states that, at that time, there was no inquiry into his involvement and no indication that he had any involvement in the warrant incident.

Over the next two years, Plaintiff Williams observed, as did others, various improprieties involving Defendant Captain Bullard and other police officers. Plaintiff reported these improprieties to Defendant Bankston and others. On one occasion, Plaintiff Williams reported to Chief Bankston that Defendant Bullard was "fixing" traffic tickets for favored citizens. Plaintiff Williams also reported that, while on duty, Defendant Bullard was improperly earning a personal profit for providing various security services for a gambling ship. Defendant Bankston reprimanded Plaintiff Williams for his reports. Plaintiff Williams claims that both Defen-

dants, Bullard and Bankston, personally benefitted from Defendant Bullard's actions.

In 1991, a local newspaper sought information regarding the 1989 unauthorized warrant issuances, and a reporter scheduled an interview with Plaintiff McDonald to discuss the matter. Plaintiff claims that when she was interviewed by the reporter, Defendant Bullard was not only present at the interview but controlled and directed the interview and Plaintiff's answers to questions.

The newspaper investigation prompted another internal investigation within the police department regarding the warrant issuances. As a result of the investigation and an apparent attempt to place blame, Defendant Bullard, with the knowledge of Defendant Bankston, confined Plaintiff McDonald against her will in a room until she wrote a statement in accordance with an outline provided by Defendant Bullard. The statement implicated both Plaintiffs McDonald and Williams in the 1989 unauthorized warrant issuances. The statement also accused Williams of harassing McDonald sexually and otherwise. Interestingly, the statement was notarized by Defendant Bullard.

Thereafter, based upon Plaintiff McDonald's second statement, McDonald was threatened with jail time for her participation in the unauthorized warrant issuances unless she agreed to be "wired" while trying to incriminate Plaintiff Williams in the warrant incident. Plaintiff McDonald agreed to be wired but Plaintiff Williams did not incriminate himself during their conversation.

Next, Defendant Bullard, with the knowledge of Defendant Bankston, coerced Plaintiff Williams into early retirement with threats of criminal prosecution and termination based upon Plaintiff McDonald's second statement. The city manager failed to intervene in the retirement even though Plaintiff Williams had previously told him that he felt that Bankston was "railroading" him.

The day after Plaintiff Williams' resignation, Plaintiff McDonald was fired. She unsuccessfully appealed her termination pursuant to the procedures provided by the City of Freeport. First, Plaintiff and her attorney

had a post-termination meeting with Bankston. At the meeting she was given a letter stating that she was terminated because she gave a false statement during the course of an internal and criminal investigation either in the 1989 or 1991 statement, disrespect shown a superior officer, and "conduct subversive of the good order and discipline of the Department." At this meeting, Plaintiff was only allowed to have her attorney argue her case. She was not allowed to call witnesses on her behalf or cross-examine witnesses against her.

Second, Plaintiff states that, for her appeal, she was allowed a meeting with the City Manager regarding her termination. However, Plaintiff's appeal was ultimately denied because it was not timely. The City has written personnel policies [1] which allow appeals to be made within three days following the hearing with the department head, Defendant Bankston. Since Plaintiff's meeting with Bankston was on Thursday, the deadline fell on Sunday when the city offices were closed. On Monday, Plaintiff tendered her appeal.

Plaintiff McDonald claims that Defendants are continuing to harass her to prevent her from discussing the 1989 and 1991 investigations.

Plaintiff McDonald states four causes of action under 42 U.S.C. § 1983 alleging that Defendants (1) deprived her of her legitimate expectancy of continued employment without due process of law, (2) deprived her of her legitimate expectancy of continued employment without just cause for discharge, (3) deprived her of her right to personal liberty not to be restrained by the government in the exercise of her personal freedom to move about and to choose what activities to engage in when she was confined to sign the second statement and when she was wired (although Plaintiff has not prayed for relief for this violation), and (4) retaliated against her for exercising her First Amendment rights regarding the warrant incident by being forced to wear a wire and being denied employment opportunities.

Plaintiff Williams states three causes of action under 42 U.S.C. § 1983 alleging that Defendants (1) retaliated against him for exercising his First Amendment right by coercion into early retirement (2) deprived him of his legitimate expectancy of continued employment without due process of law by forcing him to retire, and (3) deprived him of his legitimate expectancy of continued employment without just cause.

### II. Summary Judgment

■ Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is an authentic issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact finder could decide in favor of the nonmoving party. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ In ruling on a motion for summary judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in its favor. Credibility determinations, the weighing of evidence, and the drawing of reasonable inferences are all left to the trier of fact. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

■ Under Fed.R. of Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56;

---

1. These policies are remarkably dated, having been issued on April 17, *1978.*

*Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987).

■ Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is *no genuine issue for trial." Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(c)) (emphasis original).

### III. Qualified Immunity

Defendants Bullard and Bankston move to dismiss Plaintiffs' claims against them individually on the grounds that Plaintiffs have not met the heightened pleading standard required when an official of a governmental entity raises the qualified immunity defense.[2] Defendants contend that since they have raised the qualified immunity defense, Plaintiffs must reach the heightened pleading standard. Since Plaintiffs' claims do not reach this standard, the complaints should be dismissed. Alternatively, Defendants move for a summary judgment of qualified immunity.

In opposition, Plaintiffs state that they are entitled to amend their pleadings in light of Defendants' assertion of qualified immunity.[3] Alternatively, Plaintiffs contend that their complaints do not need to meet the heightened pleading standard because Defendants have failed to demonstrate that they are entitled to qualified immunity. Finally, Plaintiffs assert that the evidence presented by the Defendants' affidavits raises fact issues which preclude summary judgment.

■ The question of whether qualified immunity will protect an official is one of law for the Court to decide. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). To be entitled to qualified immunity, a governmental official must have been performing discretionary functions, and his conduct must not have violated clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ Essentially, this determination involves the implementation of a two-part test. When considering a motion to dismiss, the first aspect of this test requires the Court to determine whether the plaintiffs' allegations, if accepted as true, state a claim for a violation of any rights secured under the Constitution. *Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir.1992); *see Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 1791, 114 L.Ed.2d 277 (1991). Additionally, the Fifth Circuit requires the plaintiff to "state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity." *Elliott v. Perez,* 751 F.2d 1472, 1473 (5th Cir.1985). Consequently, a plaintiff invoking 42 U.S.C. § 1983 must plead "specific facts, not merely conclusory allegations." *Id.* at 1479. If the plaintiff fails to specifically claim a constitutional violation, then the court must dismiss the plaintiff's case. *See Quives v. Campbell,* 934 F.2d 668, 670–71 (5th Cir.1991).

---

2. The Supreme Court recently held that because municipalities do not enjoy immunity from § 1983 actions, plaintiffs who file suit against a municipality do not have to meet the heightened pleading standard. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* — U.S. —, —, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993). The Supreme Court also stated that it was not considering the veracity of requiring the heightened pleading standard in cases involving individual government officials. *Id.* Thus, this Court is required to review Plaintiffs' pleadings in accordance with the heightened pleading standard mandated by the Fifth

Circuit. *See, e.g., Elliot v. Perez,* 751 F.2d 1472, 1473 (5th Cir.1985).

3. Plaintiffs also request the Court to grant them leave to file amended complaints containing the specific facts listed in their affidavits. Since leave should be granted freely, the Court will grant this motion insofar as it adheres to the dispositions and limitations contained below in this Order. The Court will also treat the additional facts, for purposes of this decision, as if they were contained in the pleadings now being considered.

If a plaintiff's complaint does specifically state a constitutional violation, the court must then consider whether the right which the governmental official allegedly violated was "clearly established." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of preexisting law, the unlawfulness must be 'apparent.' " *Id.* (citations omitted). If the plaintiff cannot demonstrate the clear establishment of the alleged right, then a district court must dismiss. But, if the right is clearly established, then the court must examine the "objective reasonableness" of the defendant's conduct in reference to established law. *Salas*, 980 F.2d at 305–06.[4]

### A. Freedom of Speech

Plaintiffs both claim that the Defendants violated their constitutionally protected right to free speech. McDonald claims that Bullard and Bankston threatened her and terminated her in retaliation for her providing or attempting to provide information to the newspaper regarding the 1989 unauthorized warrants. However, Plaintiff does not state exactly what information she provided the newspapers. She merely claims that she provided information regarding the warrant incident, or in other words, illegal activity within the government. Williams claims that he was retaliated against for reporting, to superiors, improprieties and possible illegalities committed by Bullard, Bankston, and others.

It is well established that a public employee may not be discharged, disciplined, or punished for exercising the right to free speech. *See, e.g., Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97

L.Ed.2d 315 (1987); *Page v. DeLaune*, 837 F.2d 233, 237 (5th Cir.1988). But, this right to free speech is not absolute. To obtain relief from a district court, a public employee must demonstrate that:

1. the speech addressed a matter of public concern;

2. the employee's interest in communicating upon matters of public concern outweighs the defendant's interest in promoting the efficiency of the public service they perform; and

3. the employee's discipline was motivated by the uttered speech.

*Thompson v. City of Starkville*, 901 F.2d 456, 460 (5th Cir.1990).

Whether speech addresses a matter of public concern depends upon "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Meyers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). One test under this first factor is to decide whether the speech at issue was made primarily in the plaintiff's role as a citizen upon public matters or primarily in the plaintiff's role as an employee upon personal matters. *Rathjen v. Litchfield*, 878 F.2d 836, 841 (5th Cir.1989). Plaintiff McDonald's complaint indicates that she provided information to the newspaper regarding the unauthorized warrants. The Fifth Circuit has stated that if speech complains of misconduct within a police department, it should be classified as speech addressing a public concern. *Thompson*, 901 F.2d at 463. Thus, the Count concludes that McDonald's speech addressed an issue of public concern.

In Plaintiff Williams' case, the Court has little doubt that the speech in question addressed matters of public concern. William's complaint indicates that he reported to superiors within the City what he felt were unauthorized and unethical, if not illegal, practices on the part of Bullard, Bankston, and others. It has been long settled that

---

**4.** Incidentally, Defendants cite *no* cases or make any legal arguments which support their contention that the constitutional violations of which they are accused were not clearly established. However, the Court will examine each of Plaintiffs' claims and Defendants' actions to determine whether Defendants violated clearly established law. The Court strongly admonishes Defendants to fully research and brief any future motions.

public employees have the right to report upon important conditions of employment. *Bickel v. Burkhart,* 632 F.2d 1251, 1255 n. 6 (5th Cir.1980). Moreover, the Fifth Circuit has specifically held that misbehavior of any kind on the part of public officials implicates public concern. *Brawner v. City of Richardson,* 855 F.2d 187, 192 (5th Cir.1988).

As to the second test of whether Plaintiffs allege a violation of free speech, the Court concludes that the Plaintiffs' interest in communicating these matters of public concern outweighs Defendants' interest in promoting and administering an efficient police department. There is little doubt that those who engage in whistle blowing occupy a special place in the protective bosom of the First Amendment. *Brown v. Texas A & M Univ.,* 804 F.2d 327, 337 (5th Cir.1986). "Public employees are uniquely qualified to reveal unseemly machinations by their fellow employees because they observe them on a daily basis." *Id.* The specter of public misconduct so often seems to haunt this country's institutions, eroding confidence and causing a debilitating sense of cynicism among the populace that hinders the ability of governments at all levels to effectively operate.

The Court's desire to have all manner of illegal and unethical behavior exposed and punished forces the Court to conclude that only matters of national security and the like should ever prevent a public employee from revealing or generally objecting to improper public practices. Inasmuch as it would be ludicrous to even suggest that such concerns affect the present case, the Court concludes that the Defendants' interest in promoting and administering a police department does not even remotely outweigh the Plaintiffs', or anyone's, interest in revealing alleged public improprieties.

The third factor in determining whether Plaintiffs have alleged a constitutional violation of free speech was mandated by the Supreme Court in *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The Supreme Court stated that in cases like this, where a plaintiff has already demonstrated that his conduct was constitu-

tionally protected, the plaintiff must also demonstrate that his conduct was a "substantial factor" or a "motivating factor" for the defendants' action toward the plaintiff. *See Id.* at 287, 97 S.Ct. at 576.

Although Plaintiff McDonald fails to specifically state what information she provided the newspaper, she does state that the content of that speech concerned the unauthorized warrant issuances. Furthermore, Plaintiff sufficiently demonstrates that Defendants' actions were made in retaliation for that speech. As such, the Court is satisfied that Plaintiff has at the least made a prima facie showing that her speech was a motivating factor in Defendants' actions toward her.

The Court also finds that Plaintiff Williams has alleged sufficient facts to show that his speech was a substantial factor in motivating the Defendants to force him to resign. Therefore, the Court concludes: that both Plaintiffs McDonald and Williams adequately demonstrate that they engaged in protected speech; that their interest in engaging in this speech outweighs any interest of Defendants; and, that their protected speech was a motivating factor in her termination and his involuntary retirement, respectively. Consequently, the Court concludes that Plaintiffs have sufficiently stated a claim against Defendants for deprivation of Plaintiffs' constitutionally protected right to free speech.

Having held that Plaintiffs have stated a claim for violation of their First Amendment rights, the Court must now consider whether the First Amendment right which the governmental officials allegedly violated was "clearly established." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. It is clearly settled law that a government employer cannot retaliate against an employee for the exercise of protected First Amendment rights. *Reeves v. Claiborne County Bd. of Educ.,* 828 F.2d 1096, 1103 (5th Cir. 1987) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see also Mt. Healthy,* 429 U.S. at 274, 97 S.Ct. at 568. Furthermore, it is also clearly established law that it is a constitutional violation to threaten discharge for the exercise of First Amendment rights. *Fyfe v.*

*Curlee*, 902 F.2d 401, 404 (5th Cir.1990), *cert. denied*, 498 U.S. 940, 111 S.Ct. 346, 112 L.Ed.2d 310 (1990) (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 574, 88 S.Ct. 1731, 1737, 20 L.Ed.2d 811 (1968).

Although the determination of which First Amendment rights are protected involves a balancing test, prior adjudication of relatively similar facts can put defendants on notice of the legality of their actions and constitute clearly established law for purposes of qualified immunity inquiries. *Edwards v. Gilbert*, 867 F.2d 1271 (11th Cir. 1989); *Berdin v. Duggan*, 701 F.2d 909 (11th Cir.1983), *cert. denied*, 464 U.S. 893, 104 S.Ct. 239, 78 L.Ed.2d 230 (1983). The Court concludes from the analysis above and the similar cases cited that Defendants violated clearly established law. *See, e.g., Fyfe*, 902 F.2d 401 (5th Cir.1990); *Rathjen v. Litchfield*, 878 F.2d 836 (5th Cir.1989); *Wheeler v. Mental Health & Mental Retardation Auth.*, 752 F.2d 1063 (5th Cir.1985), *cert. denied*, 474 U.S. 824, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985); *Bickel v. Burkhart*, 632 F.2d 1251 (5th Cir.1980). The Court further concludes that Bankston's and Bullard's actions were not objectively reasonable in light of this law. Consequently, the Court DENIES Defendants' motion to dismiss with respect to Plaintiffs' First Amendment claims. The Court also finds that Defendants Bankston and Bullard are not entitled to qualified immunity with respect to the First Amendment claims.

### B. Procedural Due Process

The second constitutional violation alleged by Plaintiffs is that Defendants violated Plaintiffs' Fourteenth Amendment rights by depriving Plaintiffs of their property interest in continued employment as employees of the police department without due process of law. In order to bring an action for procedural due process violations, Plaintiffs must first establish the existence of a property interest. *Bishop v. Wood*, 426 U.S. 341, 343–47, 96 S.Ct. 2074, 2077–79, 48 L.Ed.2d 684 (1976); *Brown*, 804 F.2d at 333–34. As tenured, city employees who could only be discharged for just cause, the Court

finds that Plaintiffs had a constitutionally protected, property interest in their positions within the police department. *Rathjen*, 878 F.2d at 838; *Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 980 n. 2 (5th Cir.1986). Defendants have not contested the existence of Plaintiffs' property interest.

After having determined that Plaintiffs had a protected, property interest, the Court next considers whether Plaintiffs have plead sufficient facts with particularity to show that they were denied due process with respect to that property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).

Plaintiff McDonald claims that she was deprived of her right of continued employment without procedural due process. Several years before the actions alleged in this case took place, the Fifth Circuit defined the minimum pre-termination procedural elements that are required by the due process clause of the Fourteenth Amendment. If a governmental employer chooses to postpone a nonprobationary employee's opportunity to a full-evidentiary hearing until after dismissal, the employer must provide certain risk-reducing procedures before termination. *Wheeler*, 752 F.2d at 1067. These procedures must include written notice of the reasons for termination and an effective opportunity to rebut those reasons. *Id.* The opportunity for rebuttal must give the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decisions. *Id.*

To establish a denial of due process, Plaintiff must show that prior to the termination, she did not receive written notice of the reasons for dismissal and an opportunity to respond in writing to those reasons. *Id.* at 1068. In light of the facts stated in Plaintiff McDonald's complaint, it is clear that she has stated a claim for violation of her due process rights. Plaintiff states that she was neither given notice of the charges against her nor an opportunity to explain her position prior to the discharge.[5] Furthermore,

---

5. Incidentally, the City policy manual does not provide for pre-termination notice and hearing.

the City never provided post-termination hearings or appeals which would allow Plaintiff to present witnesses or cross-examine the witnesses against her.

 Plaintiff Williams also claims that he was deprived of his property interest in continued employment without due process of law when he was forced to retire. A due process violation exists where an employee is constructively discharged by actions of the employer intended to force the employee to sacrifice his due process protection by voluntarily retiring. *Rathjen*, 878 F.2d at 838; *Findeisen v. North E. Indep. Sch. Dist.*, 749 F.2d 234, 239 (5th Cir.1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985); *Crocker v. Fluvanna County Bd. of Pub. Welfare*, 859 F.2d 14, 15 (4th Cir.1988). Thus, Plaintiff Williams must only show the lack of procedures outlined above to state a claim for a due process violation. Since Plaintiff Williams was forced to retire with no pre-termination notice, written charges, or hearing and with no post-termination procedures, the Court concludes that he has clearly stated a claim against Defendants for violation of his due process rights.[6]

 Having concluded that both Plaintiffs have stated sufficient facts with particularity to support a claim for violation of their due process rights, the Court must now consider Defendants' qualified immunity assertion. Based upon the case law cited above, the Court concludes that the constitutional violations asserted against Defendants Bullard and Bankston were clearly established in the law. Furthermore, the Court finds that their actions were not objectively reasonable in light of the established law. Consequently, Defendants' claims of qualified immunity DENIED with respect to the procedural due process claims.

On page 36, the manual states, "To be eligible for a hearing, the employee must submit a written request to his Department Head not more than one week after the effective date of the ... dismissal." Thus, not only was Plaintiff McDonald not provided due process, it is likely that no employee of the City has been provided due process at least since the Fifth Circuit decided *Wheeler* in 1985.

## C. Substantive Due Process

 Both Plaintiffs claim that they were deprived of their legitimate expectancy of continued employment without just cause for discharge. The Fifth Circuit has held that plaintiffs such as McDonald and Williams who have property rights in their employment possess substantive due process rights in their continued employment. *Schaper v. City of Huntsville*, 813 F.2d 709, 717 (5th Cir.1987). This right protects Plaintiffs from arbitrary and capricious acts of Defendants. *Id.* In light of the applicable case law, the Court finds the arbitrary and capricious acts of which Defendants are accused are violative of clearly established law and are objectively unreasonable in light of this law. Thus, Defendants Bullard's and Bankston's motions are DENIED with respect to Plaintiffs' substantive due process claims.

## D. Liberty Interest

Plaintiff McDonald alleges that she was deprived of her right to personal liberty to move about and choose what activities to engage in when she was confined to give a statement and when she was forced to wear a wire.

 "[L]iberty from bodily restraint always has been recognized as *the* core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Youngberg v. Romeo*, 457 U.S. 307, 316, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28 (1982) (emphasis added); *see also Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 18, 99 S.Ct. 2100, 2109, 60 L.Ed.2d 668 (1979) (Powell, J., concurring in part and dissenting in part). This substantive liberty right can only be infringed by restrictions that are "reasonably related to legitimate government objec-

6. Plaintiff Williams also states that he did not attempt to use the grievance process. This omission could, in some situations, prove fatal to his procedural due process claim. *Rathjen*, 878 F.2d at 838. However, the City personnel manual does not provide a grievance procedure for employees who resigned, whether voluntarily or involuntarily. Thus, Plaintiff had no procedural remedy available and his lack of attempt is not fatal to his due process claim. *See Rathjen*, 878 F.2d at 839.

tives [but] not tantamount to punishment." *Youngberg*, 457 U.S. at 320, 102 S.Ct. at 2460. The Court finds that these principles announced by the Supreme Court are clearly established law and that Bankston's and Bullard's actions were not reasonably objective in light of this law. Defendants' actions were clearly not reasonably related to legitimate governmental objectives and were clearly tantamount to punishment. Thus, the Court DENIES Defendant Bankston's and Bullard's motion to dismiss and motion for summary judgment.

## IV. *Sovereign Immunity*

■ To establish a claim for municipal liability, section 1983 plaintiffs must identify in their pleading (1) a policy (2) of a local governmental entity's final policymaker (3) that caused (4) the plaintiffs to be subjected to a deprivation of a constitutional right. *Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir.1985), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 686 (1987).

Defendant City of Freeport moves to dismiss Plaintiffs' claims because Plaintiffs have failed to identify a final policymaker of the City in their complaints which would render the City liable. Alternatively, the City moves for a summary judgment of sovereign immunity because Plaintiffs have failed to identify a policy of the City which led to their injuries. For the reasons stated below, the Court denies the City's motions.

### A. *Final Policymakers*

■ In determining which officials can render the city liable for their acts, the trial court is charged with identifying, as a matter of law, "those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violations at issue." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989). The trial court answers this question by considering state and local positive law, as well as custom or usage having the force of law. *Id.* "[A] federal court would not be justified in assuming that municipal policymaking authority lies some-

where other that where the applicable law purports to put it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126, 108 S.Ct. 915, 925, 99 L.Ed.2d 107 (1988) (plurality opinion).

Moreover, the Supreme Court has stated that:

the authority to make municipal policy is necessarily the authority to make *final* policy. When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Praprotnik*, 485 U.S. at 127, 108 S.Ct. at 926 (citation omitted).

■ Municipal authorities are not official policymakers merely because their decisions are not individually reviewed for "substantive propriety" or because the appellate review board of the city decides appeals with a substantial deference to the original decisionmaker. *Id.* at 129, 108 S.Ct. at 927. Moreover, the city is not liable when policymaking authority is in fact delegated to individuals who take retaliatory action against an individual. *Id.* at 131, 108 S.Ct. at 928.

■ Plaintiffs assert that Bankston had final policymaking authority with respect to terminations through acquiescence by the city manager. Section 4.01 of the Charter for the City of Freeport designates the city manager as both the chief administrative officer and the chief executive officer of the City who is responsible to the city council for administration of all the affairs of the City. Section 4.02(a) of the Charter states that the police chief is appointed and can be removed by the city manager with the approval of the city council.

Additionally, the Charter states that the police chief appoints and removes all subordinate employees of the police department

with the approval of the city manager. However, the personnel policy manual of the City, adopted by the mayor, merely states that a department head, such as a police chief, can discharge employees for cause. A list of violations which constitute just cause is contained in a police department manual which was adopted by Police Chief Bankston. Based upon these written policies and the pronouncements in *Praprotnik*, the Court concludes that although Bankston did have certain policymaking authority regarding terminations, he did not possess final authority which would render the City liable.

Next, Plaintiff Williams implies that Bankston had final policymaking authority regarding terminations because he could conduct investigations into police department matters without prior authorization or ongoing supervision from the city manager. However, this type of authority would render the City liable only for actions taken pursuant to the investigation but not for actions taken regarding terminations. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n. 12, 106 S.Ct. 1292, 1300 n. 12, 89 L.Ed.2d 452 (1985) (plurality opinion).

Plaintiff Williams also suggests that because Defendant Bankston never indicated that he had authority to terminate someone in the department, Plaintiff believes that Defendant never had such authority. Plaintiff states that he was aware that Bankston had no oversight in this area because he was a major in the department. This knowledge or belief on Plaintiff Williams' part, however, contradicts both Plaintiffs' assertions in their affidavits that the city manager, the final policymaker, was aware of the facts surrounding their terminations. Considering all of Plaintiffs' assertions true, the custom or policy of acquiescence by the city manager in Bankston's termination decisions which renders Bankston a final policymaker respecting terminations is not a cause of Plaintiffs' harm because, in their cases, the city manager actually approved the terminations. This lack of causation would exempt the City from liability for this harm to Plaintiffs.

Consequently, considering Plaintiffs' contradictory assertions, the written charter and policy manuals, and Plaintiffs' lack of evidence to show that Defendant Bankston was a final policymaker through "custom or usage having the force of law," the Court concludes that final decisionmaking authority regarding terminations resided solely with the city manager.

■ On the other hand, the Court reaches a different conclusion regarding Plaintiffs' claim of injury from the confinement and wiring of McDonald. Section 4.02 of the City Charter does vest the responsibility of the administration of the police department to Defendant Bankston. This would include the final policymaking authority with respect to internal investigations. Thus, the Court concludes that Defendant Bankston had final policymaking authority with respect to the actions taken during the unauthorized warrant investigation which would include the confinement of Plaintiff McDonald and the forced wiring of her.

### B. Policy or Custom

■ Having determined who the final policymakers are, the Court must next examine whether it was their decisions that caused the deprivations of Plaintiffs' rights. *Jett*, 491 U.S. at 737, 109 S.Ct. at 2723. The offending decisions may consist of affirmative acts or omissive acts of acquiescence in a longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity. *Jett*, 491 U.S. at 737, 109 S.Ct. at 2723. This is a question of fact. *Id.*

#### 1. Procedural Due Process

Both Plaintiffs claim that their due process rights were violated. But, they have not specifically identified an affirmative policy in their pleadings that caused their due process violations. Instead, they only refer to a policy or custom in conclusory terms. Evidence of a violative policy, however, was produced by the Defendants in support of their motions discussed herein.

Chapter XIV of the City's policy manual entitled "Disciplinary Hearings" reveals that the City's written policy does not provide for pre-termination, written notice of the reasons for termination and an opportunity to rebut

those reasons in writing and orally before the official charged with the responsibility of making the termination decisions. These requirements are the minimum, due process requirements when a full-evidentiary hearing is not allowed prior to discharge. *Wheeler,* 752 F.2d at 1067 (discussed *supra*).

This violative policy clearly caused the due process violations of which Plaintiffs complain. It is clear that the post-termination meeting between Bankston and McDonald was made pursuant to this policy. Furthermore, McDonald's appeal to the city manager was refused due to the time limits imposed in this manual.[7]

Nevertheless, Plaintiffs committed grave error in failing to identify this written policy. Interrogatory 6 of both Plaintiffs states that they do not contend that the written employment policies of the City are contrary to the Constitution of the United States. This assertion precludes Plaintiffs from now asserting that the written policies of the City are constitutionally unsound.

On the other hand, Plaintiffs have requested leave to amend their complaints to include the facts set forth in their affidavits. The Court will grant such leave, and because this Court is vehemently committed to halting any unconstitutional practices on the part of governmental entities, the Court will allow Plaintiffs to simultaneously file an amendment to their interrogatories and amend their complaint to include the identification of the City's written policy.

Therefore, the Court grants Plaintiffs leave to file an amended complaint within two weeks from the date of this Order. If Plaintiffs fail to file an amended complaint encompassing the above discussed written policy within the two week period, the Court will dismiss with prejudice Plaintiffs' due process claims against the City. Consequently, Defendant City's Motion regarding dismissal of the due process claim is DENIED.

### 2. Liberty and First Amendment

■ Having found that Defendant Bankston had final policymaking authority over the manner in which the warrant investigation would be conducted, the Court will consider the City's liability regarding Bankston's actions during the investigation.

"[I]t is well established that a municipality may be held liable for 'course[s] of action tailored to a specific situation and not intended to control decisions in later situations,' provided that 'the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers.'" *Gonzalez v. Ysleta Indep. Sch. Dist.,* 996 F.2d. 745, 754 (5th Cir.1993) (second alteration in original) (quoting *Pembaur,* 475 U.S. at 480–81, 106 S.Ct. at 1299). In his affidavit, Bankston states that he directed Bullard to take a second statement from McDonald and directed Bullard to request that McDonald be wired. In light of Plaintiffs' assertions, this clearly raises a genuine issue of material fact of whether Bankston's actions caused Plaintiffs' constitutional liberty violations and some of the retaliatory First Amendment violations. *Pembaur,* 475 U.S. at 484–85, 106 S.Ct. at 1300–01. Accordingly, Defendant City's motion with respect to these claims is DENIED.

### 3. Substantive Due Process

■ Previously having found that the final policymaker regarding terminations was the city manager and not Defendant Bankston, the Court will next consider Plaintiffs' substantive due process claims. Plaintiffs allege an omissive municipal custom, not affirmative act, practiced by the city manager caused their substantive due process violations. The omissive custom consisted of an acquiescence by the city manager in Defendant Bankston's termination decisions.

The custom alleged by Plaintiffs falls under the rule announced in a recent Fifth Circuit case, *Gonzalez v. Ysleta Independent School District,* 996 F.2d 745, 754 (5th Cir. 1993), in which the policy that may have produced or caused the constitutional violations was not itself unconstitutional. It is clear that the alleged acquiescence by the

---

7. The Court also has serious doubts about the constitutionality of the City's appeal process and the time constraints it imposes. The policy is discussed *supra.*

city manager in Bankston's termination decisions is not, in itself, constitutionally violative.

 In this situation, municipalities may be held liable if their policies reflect a "deliberate indifference to constitutional rights." *Id.* at 759. "The 'deliberate indifference requirement permits courts to separate omissions that 'amount to an intentional choice' from those that are merely 'unintentionally negligent oversight[s]'" *Id.* at 756 (alteration in original) (quoting *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir.1992)). These types of policies render the city liable only when plaintiffs show that the policies "were enacted or made with deliberate indifference to their possible unconstitutional consequences." *Gonzalez*, 996 F.2d at 759. Municipalities may be held liable when the policymakers were aware of, and acquiesced in, or in other words, tacitly authorized, a pattern of constitutional violations. *Id.* at 761–62; *City of Canton v. Harris*, 489 U.S. 378, 396–398, 109 S.Ct. 1197, 1208–10, 103 L.Ed.2d 412 (1989) (O'Connor, J., concurring); *Jane Doe "A" v. Special Sch. Dist.*, 901 F.2d 642, 646 (8th Cir.1990).

Plaintiff McDonald first insinuates that the denial of her appeal, based on untimeliness six weeks after the city manager listened to her complaints, indicates that he knew she was unjustly terminated. Although the Court finds Plaintiff's inference questionable, it finds the evidence particularly interesting that during this hearing with the city manager, Plaintiff was not allowed to speak on her behalf nor was her attorney allowed to cross-examine Bankston or the other witnesses against her. A reasonable inference from this and other evidence is that the city manager could have deliberately averted his eyes to Plaintiffs' constitutional violations effected by Defendant Bankston. The Court finds that this wholly unconstitutional conduction of a termination hearing by the city manager, and Plaintiffs' other evidence, raises a genuine issue of material fact about whether the city manager was deliberately indifferent to the constitutional rights of both Plaintiffs or whether he tacitly authorized a pattern of constitutional violations.

Thus, the Court DENIES the Defendant City of Freeport's motion to dismiss and motion for summary judgment subject to the conditions imposed above concerning the due process claim.

### V. Conclusion

In light of the foregoing, the Court DENIES each and all of Defendants' motions to dismiss and motions for summary judgment. However, as stated above, if Plaintiffs fail to amend their complaints within two weeks from the date of this order to encompass the suggested due process claims against the Defendant City, the Court will grant the City's motions regarding those claims.